EDWIN H. PECKARD, Administrator *d. b. n. c. t. a.* of HENRY L. PECKARD, Deceased, and MARY C. PECKARD,

*vs.*

JOHN R. PRICE, Late Executor of HENRY L. PECKARD, Deceased, and FRANCIS S. DUNLAP, Administrator of FRANCIS D. DUNLAP, Deceased, also Late Executor.

New Castle, Sept. T. 1878.

*Executors with naked power to sell; securities for purchase money taken by; conclusiveness of account charging themselves with money instead of securities.*

1. Where executors have, under the will, a naked power to sell realty for conversion into personalty for payment of debts and of a legacy of the income to a certain legatee for life, with remainder of the principal over, without any bequest or power to them as trustees, the terms of sale to be at their option; and they sell realty under such power, and take a bond and mortgage on the land for the unpaid purchase money,— such securities pass to them as executors only, and not as trustees.

2. Where executors who have sold realty under a naked power, and have taken security for the unpaid purchase price, as they were empowered to do, charge themselves in a partial account as with cash received and moneys collected to the extent of such unpaid purchase money; and such account is settled and adjusted by the register of wills; and no exceptions thereto are filed within the time limited by law,— such account becomes fixed and unalterable before any tribunal.

3. Where, in such a case, the executors are called upon, by an administrator *de bonis non* of their testator, to pay over the amount with which they have so charged themselves in such fixed account, they will be compelled so to do; and a loss occasioned through depreciation of the land covered by the securities, taken by the executors in their individual names, must fall upon them, and not upon the estate. They cannot resist the demand on the ground that they hold the fund *in specie* as trustees, and that they can only be called upon for an assignment of the securities.

BILL, UNDER THE STATUTE, TO OBTAIN POSSESSION OF UN-ADMINISTERED ASSETS OF A DECEDENT'S ESTATE.—The bill was brought by the administrator *de bonis non cum testamento annexo* of Henry L. Peckard, deceased, against the surviving executor, and the personal representative of the deceased coexecutor of said decedent, to recover a balance of money with which such executors had charged themselves in settling an account before the register.

Henry L. Peckard, in his lifetime, published his last will and testament in writing, dated November 2, 1864. John R. Price and Francis D. Dunlap were appointed executors thereof.

Henry L. Peckard died in the month of August, 1865. His will was duly probated after his death, in the same month and year, and letters testamentary were granted to the executors named therein. They accepted the office, and as such executors passed several accounts before the register of wills for New Castle County, in and by the fourth and last of which, passed on September 7, 1869, they showed a balance in their hands as executors, due the estate of said deceased, of $3,718.63.

Francis D. Dunlap died intestate in 1870. Letters of administration were granted on his estate, in March of that year, to Francis S. Dunlap, one of the defendants.

John R. Price as surviving executor of Henry L. Peckard, and Francis S. Dunlap as administrator of the estate of Francis D. Dunlap, on September 15, 1870, passed an account before the register of wills upon the estate of said Henry L. Peckard, showing a balance in their hands, of the said estate,

of $3,083.62. And on the same day John R. Price, upon his own petition, was removed from his office as surviving executor of Henry L. Peckard, deceased, by the then register of wills; and Edwin H. Peckard, the complainant, was thereupon appointed administrator of the estate of the said Henry L. Peckard, *de bonis non cum testamento annexo.*

It is stated in the bill that the administrator *de bonis non,* as aforesaid, had demanded of John R. Price and Francis S. Dunlap the delivery of all the unadministered effects belonging to the said Henry L. Peckard, and that they refused the demand.

It appears that Henry L. Peckard, in his will, directed his executors to sell certain lots of land situate in Delaware City, and also a farm in Pencader Hundred in said county, on such terms as his executors should think best; and that after paying his debts the income from the residue of his estate not therein otherwise devised and bequeathed should be paid to Mary C. Peckard, his widow, during her life and while she should remain unmarried; and at her marriage or decease the said estate should go to the complainant Edwin H. Peckard, the only child of the testator, and to his child or children in equal shares.

John R. Price and Francis D. Dunlap, on April 13, 1867, sold the farm in Pencader Hundred to William Kirkley for the price of $4,550. The farm was subject to a mortgage and judgment executed by Henry L. Peckard, in his lifetime, to Margaret Morgan, to secure the payment of the sum of $4,000, with interest; which judgment was also a lien upon certain lots of land in Delaware City, as well as upon all the other real estate of said testator.

The mortgage and judgment to which the farm in Pencader Hundred was subject were assigned to the said Francis D. Dunlap, who, the bill alleges, paid the amount of the same to L. Amande Gilbert as executrix of Margaret Morgan; and the said farm was sold by said Price and Dunlap to William Kirkley.

The bill states and charges as follows: "The said Francis

S. Dunlap and the said John R. Price have, so as aforesaid,. in their hands, the aforesaid balance of $3,083.62, subject to the trusts of said will, to pay the debts of the said Henry Peckard, and also, after the payment of said debts, to pay the income arising from the balance thereof to the complainant Mary C. Peckard, widow of the said testator, during her life while she shall remain unmarried, and at her decease or mar-- riage to pay the said balance to the said Edwin H. Peckard and his children."

Francis D. Dunlap and John R. Price, in their adminis- tration accounts on the estate of Henry L. Peckard, deceased,. charged themselves with sundry amounts of money received from said William Kirkley; and the said amounts so received constitute a part of the said unappropriated balance of $3,083.62.

As a defense to the claim of the complainants to the whole of this unappropriated balance, and against their liability therefor, the defendants, in their answer, say that they have not at any time refused to the said Edwin H. Peckard the unadministered effects of the said Henry L. Peckard, deceased, except *sub modo;* and they further say that the facts upon which any alleged refusal was based are these: That soon after the taking out of letters testamentary, as alleged in said bill, by the said Francis D. Dunlap and John R. Price, as. executors named in the said will of said Henry L. Peckard,. deceased, they, the said Dunlap and Price, with all diligence, proceeded to execute the power of sale conferred on them by said will, and, anxiously seeking for the best interests of the estate of said Henry L. Peckard, did on or about April 19,. 1867, sell the farm in said will mentioned, as they aver and believe, to great advantage, to one William Kirkley, for the price or sum of $4,850; that in part payment thereof they took from the said purchaser two judgment bonds dated April 13, 1867,—one for the sum of $1,000 payable March 25, 1872, and the other for the sum of $3,000 payable March 25, 1877,—each of said bonds being for a penal sum of double the amount secured, and in the usual form, with warrants of

attorney attached.    That the said bonds, through the omission of the draughtsman of the same, were taken in the individual names of said Dunlap and Price, and not to them as executors, but always held, used, and considered as part of the assets of the estate of the said Peckard in their hands. That by reason of the terms of sale,— that is to say, the credit given on the security of said bonds (and which they were advised and believed was fully within their discretion under the said power of sale; which discretion they aver they exercised in good faith),—the said farm was sold for a much higher price than could otherwise have been obtained for the same.    That upon the warrants of attorney attached to these bonds, two several judgments were entered in the Superior Court in and for New Castle County, being Nos. 272 and 273 of the May Term, 1867.    That debts thus secured were charged to the said Dunlap and Price in the accounts passed before the register, as stated in the bill of complaint; not appearing as separate items, but constituting in their full amount a portion of the aggregate sum charged to them, and now representing more than the balance with which they stand charged in the last account passed.    That having always acted in good faith in discharge of their duties as executors, and having accounted for all moneys actually received by them belonging to the estate, the said Dunlap in his lifetime, and the said Price, considered that the said bonds and the judgments upon them belonged to the estate of the said Peckard for what they were worth; and that no responsibility attached or would attach to them for any depreciation that might take place in their value.

The defendants claim, in their answer, that, in the absence of any negligence upon their part, they are only required to transfer said judgments, or so much thereof as may be necessary for that purpose, to the said Edwin H. Peckard in discharge of the balance wherewith they are charged in said administration accounts, estimating the said judgments at their face or par value; and that they are not liable for any loss or depreciation in the same that may have occurred by

the shrinkage in the value of real estate in the county since the said bonds were given.

*Anthony Higgins*, for the complainants :

Whenever an executor or administrator is removed or dies before he closes the estate of the deceased, his coexecutor shall be entitled to receive all the unadministered effects, including books and papers, which, at the time of such removal or death, shall be in his hands, or for which he is answerable, just allowances being made. If any executor or administrator so removed shall refuse to deliver to his successor all the unadministered effects belonging to the deceased, which shall be in his hands, the chancellor in the court of chancery shall have power, in a summary proceeding upon the petition of such coexecutor, administrator, or successor, to hear the parties, and make an order for such delivery, and to enforce the same by attachment or sequestration. Rev. Code, chap. 89, p. 541, § 10. See also Act of Assembly, March 19, 1863, chap. 314 ; Rev. Code, p. 554, § 2.

The register had the proper and sole jurisdiction to audit and settle the account of the executors. Const. art. 6, § 21. This settlement ascertains an amount and binds the executors until appealed from to the orphans' court, where alone these accounts can be questioned. *Robinson* v. *Robinson*, 3 Harrington, 437.

Where an administrator dies or is removed from office before closing the concerns of the estate, his sureties are liable on his bond for whatever balance was in his hands, at the time of his removal or death, belonging to the estate, with which he has charged himself. *State* v. *Tunnell*, 5 Harrington, 191.

The mode prescribed by law for ascertaining the assets of the estate in the hands of the executor is by the executor's account, which must be filed before the register of wills. This consists of the inventory of the goods and chattels or other proceeds of the estate, and also a list of the debts. Rev. Code, chap. 89, p. 545, § 19.

The register shall have power to order an inventory or

list of debts to be suppressed, or to adjudge the same imperfect, and to order another to be made and delivered into his office. From the register's decision either party may appeal to the orphans' court, and said court may affirm, modify, or reverse the decision, and upon such reversal shall make such order as the register ought to have made ; and the testimony at the hearing before the register shall be taken in writing by deposition, which on the appeal go to the orphans' court. Id. chap. 89, p. 546, § 23 ; Del. Const. art. 5, §§ 21, 22.

If an executor fail to render his account annually and a final account, the register shall issue process of attachment against him and enforce it by imprisonment. Rev. Code p. 548, § 31.

This account therefore ascertains the sum due the next of kin.

Jurisdiction over the ascertainment of this fact, and of what Mr. Price, as surviving executor, should have turned over to the complainant as his successor, is by this statute vested exclusively in the register, with the appeal to the orphans' court.

The account of the surviving executors filed in the register's office, and passed and allowed by him, shows a final balance due the estate, September 15, 1870, of $3,083.62 in money,—and not in any securities of any kind.

The passing and allowing, by the register, of this account, fixes the liability of the surviving executor for this sum, as a judicial determination by the tribunal having exclusive juris diction thereof. The accounts are also conclusive on the executors as their solemn acts and admissions.

A decree of a court of probate, unless appealed from, is final and conclusive upon the parties as to all matters within its jurisdiction which are necessarily involved in the issue. 3 Redf. Wills, 220 ; *Mix's Appeal*, 35 Conn. 121 ; *Paine* v. *Stone*, 10 Pick. 75 ; *Jennison* v. *Hapgood*, 7 Pick. 1 ; *Robbins* v. *Hayward*, 16 Mass. 524.

The register is the exclusive forum for the settlement, in the first instance, of all questions affecting faithful administra-

tion; and those questions which are involved in that inquiry cannot be drawn into any other tribunal by means of an action upon the administration bond, or in any other mode, unless by appeal from him. 3 Redf. Wills, 266, § 6.

As to what the action of the register in settling administration accounts under the Constitution and Laws of Delaware amounts to, see *Robinson* v. *Robinson*, 3 Harrington, 433. See also *State* v. *Wilson*, Id. 348.

The defense set up by the answer—that the executors are not indebted to the estate of Henry L. Peckard in the balance of money with which they charged themselves, but are bound only to hand over to the administrator *de bonis non cum testamento annexo* the mortgages and bonds which they received for the sale of the Pencader Hundred farm—is an attempt in this case, and before the chancellor, to contradict the account as settled by themselves before the register and without appeal to the orphans' court.

An executor is to be considered as holding a legacy in that character, unless it clearly appear from the will that the testator intended it to be held as trustee. Hill, Tr. *237, note 1; *State* v. *Nicols*, 10 Gill & J. 27; *Perkins* v. *Moore*, 16 Ala. 9.

Where a testator directs that a pecuniary bequest shall "be kept and loaned out upon interest by my executors" until the happening of a certain event, and then be divided among the legatees, the executors will be considered as holding the funds as executors, not as trustees. Hill, Tr. *237, note 1.

*Cestuis que trust*, to be affected by the consent or acquiescence in improper investments by trustees, must be *sui juris* and capable of acting for themselves. Married women, minors, etc., are not bound by any alleged acquiescence. Perry, Tr. § 467.

To take a mortgage for $4,000 when the whole price was but $4,800 was gross negligence. *Vreeland* v. *Vreeland*, 16 N. J. Eq. 530. Mortgage on two thirds of the value of real estate is the outside limit. Perry, Tr. § 453; Hill, Tr. *457, 495.

The general rule appears to be that trustees will not be justified in lending more than two thirds of its worth on free-hold property of a fixed and permanent value, nor more than one half upon property of a fluctuating character. Hill, Tr. 562, note (2).

A loan upon mortgages of freeholds of inheritance to the extent of two thirds of their value may be allowed. Hill, Tr. *368, note (*b*); *Wyatt* v. *Sharratt*, 3 Beav. 498. But the rule of two thirds is not inflexible. Perry, Tr. § 457, note (*b*); *Stickney* v. *Sewell*, 1 Mylne & C. 8; *Norris* v. *Wright*, 14 Beav. 307; *Macleod* v. *Annesley*, 16 Beav. 600.

It may be improper to loan even two thirds of the present value; as, when the value depends upon the chances of trade or business, and where the property consists of houses liable to deterioration. Hill, Tr. *368, 562 note (2); Perry, Tr. § 457, note (7); *Phillipson* v. *Gatty*, 7 Hare, 516; *Drosier* v. *Brereton*, 15 Beav. 221; *Stretton* v. *Ashmoll*, 24 L. J. Eq. 277; *Farrar* v. *Barraclough*, 2 Sm. & G. 231.

Trustees ought not to lend on a second mortgage, though it might not be a breach of trust in all cases to do so. Perry, Tr. § 457, note (9); *Norris* v. *Wright*, 14 Beav. 291; *Drosier* v. *Brereton*, 15 Beav. 221; *Robinson* v. *Robinson*, 11 Beav. 371; 1 De G. M. & G. 247; *Lockhart* v. *Reilly*, 1 De G. & J. 476; Hill, Tr. 563, note.

If a trustee pays the money into a bank in his own name, and not in the name of the trust, he will be responsible for the money in case of the failure of the bank. Hill, Tr. *376; 2 Wms. Exrs. *1648, note (1); Perry, Tr. § 463, note (7) and cases cited; *Wren* v. *Kirton*, 11 Ves. 377; *Freeman* v. *Fairlie*, 3 Meriv. 39; *Pennell* v. *Deffell*, 4 De G. M. & G. 392; *Re Hilliard*, 1 Ves. Jr. 89; *Rocke* v. *Hart*, 11 Ves. 61; *Jenkins* v. *Walter*, 8 Gill & J. 218; *Lukens's Appeal*, 7 Watts & S. 48; *Stanley's Appeal*, 8 Pa. 431; *Royer's Appeal*, 11 Pa. 36.

Where a trustee or guardian is obliged to take land subject to a mortgage, the trustee becomes personally liable to pay off the mortgage, to protect the interest of the *cestui que*

*trust.* Perry, Tr. § 458, note 8; *Woodward's Appeal*, 38 Pa. 322.

If an executor take an obligation in his own name for a debt due to the testator, he shall be equally chargeable as if he had received the money; for the new security has extinguished the old right and is a quasi payment. 2 Wms. Exrs. *1510 (*p*); *Norden* v. *Levit*, 2 Lev. 189; *Hosier* v. *Arundell*, 3 Bos. & P. 7; *Partridge* v. *Court*, 5 Price, 419.

An executor is personally liable, in equity, for all breaches of the ordinary trusts which in courts of equity are considered to arise from his office. 2 Wms. Exrs. *1629.

The proceeds of a sale of land by an executor or administrator, whether by order of the orphans' court or under a power in a will, is the proper matter for an administration account. Rev. Code, chap. 90, p. 560, §§ 14, 17.

As in case of proceeds of sale of land, to pay debts by order of orphans' court, see *Barwick* v. *White*, 2 Del. Ch. 284; and of a sale of land of intestates on a *venditioni exponas*, where a balance of proceeds of sale has been ordered to be paid by the sheriff to the administrator of the defendant, *Robinson* v. *Robinson*, 3 Harrington, 433.

If the executors taking such a bond in their own name happen to die intestate before the debt due on the bond entered into with them in their own name is recovered, it cannot be contended that the administrator *de bonis non* will be able to put that bond in suit. In such case the administrator of the estate of the surviving executor would be the person on whom the right of action arising out of the bond would unquestionably devolve. *Hosier* v. *Arundell*, 3 Bos. & P. 101.

The rule in England is, that, if an executor lays out the testator's money in the 3 per cents, he is not liable for the fall of stocks; but if he invests in any other fund, which afterward sinks in value, the loss will be thrown on him, although there be no *mala fides* on his part. 2 Wms. Exrs. *1642, 1643; *Hancom* v. *Allen*, 2 Dick. 498; *Howe* v.

*Dartmouth*, 7 Ves. 150, 3 Mylne & C. 497; *Gordon* v. *Bowden*, 6 Madd. 342.

*Thomas F. Bayard* and *George Gray*, for the defendants:

The fund in question is a trust fund,—is so declared by the bill of complaint, is stated in the answer, and so created by the will. It is the proceeds of land sold by executors by direction of the will of the testator, the "income to be paid to his widow during her life" or widowhood, with remainder over.

It is the duty of a trustee to make prompt investment of a fund; and his failure or omission to do so will be held to be a breach of trust, the consequences of which will be visited upon him. See Hill, Tr. p. 370 (*m*). And although there are no directions in the instrument as to the investment of the fund, it is equally the duty of the trustees to invest it. Id. p. 377 (*m*), and case cited in note.

In the present case the executors were directed to sell the land "on such terms as they should deem best;" but no investment was directed. The land had been heavily incumbered by the testator, and they were obliged to give credit for the greater part of the consideration money, which was secured upon the property by two mortgages bearing semi-annual interest. In this mode an investment of the fund was necessarily and unavoidably made.

To sell the farm on the "best terms," postponed payments had to be accepted, which, bearing interest and secured by mortgages, became *ipso facto* an investment; the income of which fund under the will became payable, and was in fact paid to the widow, as appears by the administration accounts.

Trustees are only answerable for negligence or willful misconduct, and are not responsible for loss, unless it has been occasioned by their own wrong. See *Townley* v. *Sherburne*, 2 Lead. Cas. Eq. 1738, *858, Am. notes; and *Taylor* v. *Benham*, 46 U. S. 5 How. 233 (12 L. ed. 130).

It is true that this debt of $4,000, the identity of which is so conclusively shown, was charged in the administration account filed, as "cash." And it is urged that this entry is conclusive and cannot be explained; because such accounts passed by a register can only be altered by appeal to the orphans' court.

In the case of *Robinson* v. *Robinson,* 3 Harrington, 440, the court says: "The sum is fixed in respect to the administration by the settlement before the register—if not appealed from, and by the orphans' court on appeal;" and at page 437 it is expressly decided that the ascertainment of a balance by a register, although conclusive as to the amount, "is no decree or judgment for the payment of money."

We do not dispute the "sum" stated; but the complainant has filed his bill to procure the assistance of the chancellor in the execution of the will of Peckard.

We hold it is the duty and the power of the chancellor to direct in what, and how, and to whom, this balance of $3,000 shall be paid. If the sum has in any way or by the operation of any lawful cause become invested in securities, then he will direct the transfer of the fund so invested to the party entitled under the will to its possession, but will not decree the payment as cash of a fund which, although described as "cash" in an item of an administration account, is shown to have been invested on mortgage, and held and treated as such by the executors.

The fund of $4,000 never was mingled with the individual moneys of the executors. It was always held by them in a purely representative capacity and *en autre droit.* They charged themselves as executors in account with an installment of the interest. They paid the interest to the widow "as income" arising from the fund so invested.

It is the peculiar function of courts of equity to pierce through appearances, and come to the very truth of a transaction; to explain obscurities and ambiguities; to protect representative parties in the honest execution of their duties; and to execute a will according to its real intent.

If, therefore, it was lawful for Dunlap and Price to make the sale as they did, and take the securities as they did, and the conscience of the chancellor is satisfied that the fund of $4,000, represented by the two mortgages of Kirkley, is part of the purchase money of Peckard's land, then he will direct the balance ascertained by the administration account passed by the register to be conclusive as to the sum due the estate, and will direct it to be satisfied by a transfer of the securities in which the fund was invested, giving to the administrator *cum testamento annexo*, and the representatives of the deceased executors, their proportion of the money which shall arise from the collection of the two mortgages.

THE CHANCELLOR.— It is manifest, from the foregoing statement of facts and allegations of the complainants and defendants, that the material question in dispute between them is whether any loss arising from the sale of the lands by Price and Dunlap to Kirkley shall be borne by the estate of Henry L. Peckard or by Dunlap and Price.

It appears in proof in this cause that the obligations for the purchase money of the farm by Kirkley were taken in the individual names of Dunlap and Price, and were not given by Kirkley to them as executors of Henry L. Peckard, but to them as individuals, and that Dunlap and Price, in their administration accounts, charged themselves with debts due by Kirkley; and the attempt of the defendants therefore seems to be to rid themselves of the burthen of this charge, and to account only for the amount which they may realize from the securities taken by them from Kirkley.

It is also manifest, from the statements made by counsel in the argument of this cause, that loss must be sustained by someone on account of the general depreciation in the price and value of land in New Castle County, and consequently in the depreciation of the value of this particular farm, by which the value of said securities may be lessened or impaired.

It would not now, it is presumed, sell for the price Kirkley bargained to give for it; and there will be loss on the securities

he gave for the payment of the price. I do not believe that any fraud was attempted or intended by either Francis D. Dunlap or John R. Price. They and Henry L. Peckard were intimate personal friends. He reposed great confidence in them as his executors. They doubtless meant to realize for the benefit of his estate the most they could from the sale of his farm.

It is fair to presume that their reason for selling the land, and taking the securities for the payment of the same to themselves personally, and charging themselves with the amount thereof in their administration accounts, was that as much might be realized for the benefit of the estate as possible, believing thereby no loss would be sustained by themselves. Indeed, there is some proof to this effect in the depositions. taken in this cause. Such was the declaration of Francis D. Dunlap as certified to by one of the witnesses examined.

How, then, stands this case? To determine this question it is necessary to consider the measure of the powers and duties of the executors, Price and Dunlap, under the will of Henry L. Peckard. That measure is the will itself.

1. The testator directs the payment of his debts, and then disposes of "the residue of my estate, real and personal," to persons other than the executors.

2. He orders the sale, by his executors, "of all the lots in Delaware City without houses on them,— the lot in St. George's, and the farm in Pencader,— on such terms as they might think best." The effect of this direction was to convert this realty into personalty, and place it in the power and control of his executors, *qua* executors.

3. There is no other duty imposed upon them by the will, not falling strictly within their province as executors.

This direction to sell invested them simply with a power. The proceeds of sale went into their hands as executors, and in no other character as trustees. The proceeds as personal estate went to them for the payment of debts, and any residue remaining after such payment passed to the legatees according to the provisions of the will in that behalf.

### *Disposition of Residue.*

1. After certain specific devises and bequests, the testator gives to his wife in lieu of dower, during life or widowhood, "all the income of my estate arising from debts, bonds, sales of goods and chattels, lots of land, and farm, together with the money arising from all other sources."

2. Coupled with this disposition is the direction to his wife, while she lives, " to apply the surplus of her income, after keeping herself, to the benefit of Edwin H. Peckard and his child or children, and his wife."

3. Subject to this provision he disposes of the estate falling in at the death or marriage of his wife, thus: (1) if his wife survives Edwin, or marries, " the estate, real and personal, of which she is possessed," to go to Lamor Curtin, or to her lawful issue; (2) if Edwin survives the wife, " the said estate, real and personal," to be equally divided between him and his children, share and share about; (3) if Edwin dies without issue, the said estate, real and personal, to be equally divided among Lamor Curtin's children.

Without entering upon the investigation of the questions arising under these limitations further than necessary to determine the position of the funds in the hands of the executors, it appears: (1) that the testator was disposing of the entire residue of his estate, real and personal, remaining after payment of debts; (2) that he gave to his wife all the income and profits arising from all sources, during her life or widowhood; (3) that in the devise over to the persons designated in remainder, " he blends the real and personal," and speaks of both as in the possession of his wife, and devises that—and that only—of which "she is possessed;" (4) it is clear this limitation cannot have regard to the " income : " (*a*) because there was no residue or accumulation of income contemplated,—it was to be expended in the maintenance of E. H. Peckard, his wife, and children; (*b*) if the corpus of the residue of the estate of the testator is not disposed of here, it remains undisposed of by the will.

The disposition by the testator (excluding the specific

devises and bequests otherwise given) was of the income and profits of his whole residue, after payment of debts, to his wife for life, or widowhood,—remainder over.

His devise consisted of both realty and personalty,— the realty, of improved lots in Delaware City ; the personalty, of that which was in the proceeds of the sale of the real estate, which, by the direction of the will, had been converted into personalty.

With the realty unconverted it is clear that, under the mere devise, it passed directly to the widow ; and the executors had nothing whatsoever to do with it, of right.    If they received the rents they must of course account for them, but there was no duty incumbent on them to receive or in any wise to intermeddle with them.

There was no gift to them, either of real or personal. They were executors only.

1. As to that which was of itself personalty, no question is involved as to the duty of the executors.    2. As to the land ordered to be sold under the power, the executors had the option to sell for cash or on credit ; and, if on credit, the time and mode of security was in their option if exercised in good faith and with due regard to the security of the purchase money.    3. When converted actually by the exercise of the power, the securities passed into their hands as executors, as part of the personal estate, applicable, first, to the payment of debts, and, secondly, to the disposition prescribed by the will.

It will be observed :

(*a*) That there is no bequest to them as trustees.

(*b*) There is no express direction for investment.    If any duty arose in this regard it was implied from the relation of the legatees for life, and in remainder, for the preservation of the fund.

(*c*) That this duty, if any, was derived because of their character as executors, and continued no longer than they occupied such relation.

(*d*) After the debts were paid, it would have been the duty of the executors to have disposed of the residue as directed by the will.

(*e*) While in the case of a general pecuniary bequest for life, followed by a subsequent limitation, even in the absence of express direction for investment, it may be doubtful whether it would not be the duty of the executors, and certainly would be the right of the party ultimately entitled, to apply to a court having jurisdiction of the subject, for its aid and direction in the investment of the fund with a view to its preservation. (No such duty or right exists when, by the will, it is contemplated that the fund itself shall pass into the hands of the legatee for life.)

(*f*) By the will of H. S. Peckard the bequest and devise over is of "the real and personal estate of which she is possessed;" these words being descriptive of the estate which was bequeathed, and *ex vi termini* indicating that the widow was to be entitled to the possession.

(*g*) Corroboration of this is the entire absence of any gift to the persons named as executors, or to any others in trust, or any direction for investment, or receipt and disbursement of the income and profits.

(*h*) But, supposing the widow not to have been entitled to the possession of the principal fund remaining after payment of debts, then, as the persons named in the will received and held it as executors only, and not in any other character as trustees, it would, upon death or removal, pass to the person appointed as administrator *de bonis non*, who would be entitled to receive it for the purposes of the will; viz., to pay debts, and then, as such administrator, as to the residue, for the several persons entitled.

There was in either aspect, therefore, no duty incumbent on the persons named as executors to make investment as trustees charged with an active and continuing trust; nor were they possessed of the funds in any other capacity than as executors.

There is no question as to any other portion of the fund except that portion of the proceeds of the farm sold, and which was secured by the bond and mortgage of the purchaser, being the principal sum of $4,000, with the interest unpaid thereon.

As to this fund, the defendants contend that they hold the same *in specie* as trustees, and are liable only to be called upon for an assignment; the complainants, that they are entitled to have the whole sum thereby secured, and that the defendants are to be charged with the sum secured, to be paid in money.

The solution of this question depends upon the true meaning of the several accounts passed before the register, and the legal operation of such accounting.

The Constitution (§ 21) prescribes that " an executor shall file every account with the register, who shall carefully examine the particulars in the presence of such executors, and shall adjust and settle the same,—which account, so settled, shall remain for inspection;" and further provides for exceptions to be heard in the orphans' court.

Rev. Code, chap. 89, § 31, provides that "an executor shall render an account in Federal money every year from the date of his letters, until the estate be closed and a final account is passed."

It is clear, therefore, that both the Constitution and the statute contemplate successive accounts, and that when the authority is given to the register to " adjust and settle " every account, it has relation to each account passed, and not to a final account only.

For this purpose the register is clothed with the power of examination, adjustment, and settlement, with an appeal to the orphans' court. The effect of an account thus settled was considered by the court of errors and appeals in *Robinson* v. *Robinson*, 3 Harrington, 433. While deciding that such settlement had not the operation of a decree for the payment of the money, it gives it this effect, that "it binds the administrator until appealed from," and "is evidence of a debt."— " Section 21 of article 6 regards him, the register, as an auditor to examine, adjust, and settle administration accounts, and gives an appeal from this settlement to the orphans' court where alone these accounts can be questioned. * * * Though it ascertains an amount and binds the administrator

until appealed from, it is no decree or judgment for the payment of money."

In this respect there would seem to be no difference between a partial and a final account as to its conclusiveness when adjusted and settled upon all matters embraced in it, upon which the judgment of the register was passed, and with which the accountant charged himself as a debt against himself, or claimed as a credit for a disbursement made by him.

Of course, if the charge was of articles of property remaining *in specie* or of credits uncollected, and which were contained in the account as such, and thus shown to be in the hands of the executor unconverted, and only estimated in Federal money as indicating their probable value, then he would not be absolutely chargeable for such estimated value in case of loss or failure to realize, without his default, but would be finally accountable for the sum actually received, and in every subsequent account would be entitled to have an allowance of the loss as a credit.

In this view the question is resolved into a construction of the accounts passed, whether the accountants have charged themselves as with cash received and moneys collected to the extent of the residue of the purchase money previously unpaid, to wit, the sum of $4,000 ; or whether it was included in the account simply as forming a part of the assets of the estate with which they were primarily chargeable, but which still remained *in specie*, unpaid and forming a subject of future accounting.

. In the consideration of this question it is of no consequence whether the original security is capable of being traced or not, or whether the money has in fact been paid or not, so far as necessary to charge the administrators, since they had the right to make themselves absolutely responsible, by their deliberate statement, that they had received the money secured by the obligation and mortgage of the purchaser ; and if by the accounts settled and adjusted they have so charged themselves, they will not be permitted to gainsay

5 DEL. CH.                    17

that which they have deliberately averred, and upon which the judgment of the register has been passed.

The administrators have charged themselves, in their accounts passed before the register of wills, with the amount which Kirkley was to pay for the land, and have stated the amount as received by them from Kirkley; and Kirkley's obligation for the purchase money, and the mortgage to secure the payment thereof, were given to them personally, and not as executors.

The accounts of an executor or an administrator can only be excepted to before the orphans' court for the county, and the time for filing exceptions to an account passed by an executor or administrator before the register is limited by law to three years from the settlement of the account.

Unless excepted to within that period, the account is fixed, and unalterable before any tribunal.

The orphans' court of the county alone has jurisdiction for the correction of errors in the accounts of executors and administrators. The jurisdiction for such corrections is not in the court of chancery.

As more than three years have elapsed since the filing of their testamentary accounts by Price and Dunlap on the estate of Henry L. Peckard, deceased, no exceptions can now be taken or had thereto; and for the same reason none could have been taken or filed thereto at the time this suit was commenced.

Their defense, therefore, as set forth in their answer, in this respect fails. *Rhoads's Appeal,* 39 Pa. 186; *Leslie's Appeal,* 63 Pa. 355; 44 Miss. 81; *Sellew's Appeal,* 36 Conn. 187.

Let a decree be drawn in favor of complainant.